NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0010n.06

No. 12-5337

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Jan 03, 2013
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| JOHN WARDIA, ) | |
| ) | |
| Plaintiff-Appellant, ) | |
| ) | |
| v. ) | On Appeal from the United States |
| ) | District Court for the Eastern |
| JUSTICE AND PUBLIC SAFETY CABINET ) | District of Kentucky |
| DEPARTMENT OF JUVENILE JUSTICE; ) | |
| CAMPBELL COUNTY REGIONAL JUSTICE ) | |
| DEPARTMENT OF CORRECTIONS, ) | |
| ) | |
| Defendants-Appellees. | |

Before: MARTIN and BOGGS, Circuit Judges; and COLLIER, District Judge.[*]

BOGGS, Circuit Judge. This case involves a disability-discrimination suit brought by John Wardia, who was terminated from his position as a Youth Worker at the Campbell County Regional Juvenile Detention Center after an injury prevented him from performing physical restraint on detained juveniles. Wardia argued that physical restraint of juveniles, in practice, was not an essential function of the job, and that the Department of Juvenile Justice unreasonably refused to grant him the permanent accommodation of a job in the facility control room. The district court disagreed, granting summary judgment to the Department. The evidence shows that physical restraints, although rare, are essential for maintaining safety in the facility, and the control room is a light-duty, temporary

---

[*]The Honorable Curtis L. Collier, United States District Judge for the Eastern District of Tennessee, sitting by designation.

No. 12-5337
*Wardia v. Justice & Pub. Safety Cabinet Dep't of Juvenile Justice*

or rotating position that the Department is not obligated to convert into a permanent job. As Wardia has not raised any genuine issues of material fact that counter those conclusions, we affirm the judgment of the district court.

I

Plantiff-Appellant John Wardia was a Youth Worker at the Campbell County Regional Juvenile Detention Center from 2003 to 2009. The main function of a Youth Worker is to "supervise[] and monitor[] activities of juveniles committed to the Department of Juvenile Justice." In performing the ordinary duties of the job, a Youth Worker "assists juveniles in interpersonal skill development," "checks premises and ensures safety of juveniles," "[t]ransports juveniles if needed," and performs necessary administrative tasks.

At some point during his employment, but due to an unrelated matter, Wardia suffered a neck injury that ultimately required surgery. The injury prevented him from performing physical restraints on juveniles, and Wardia initially asked for—and received—a temporary accommodation working in the control room of the detention center. The control room is a light-duty, typically rotating position where the Youth Worker watches the facility monitors, lets people in and out of the building, and documents any movements. After his surgery in 2008 or 2009, Wardia still could not perform physical restraints, and he returned to his assignment in the control room. At this point, Wardia's supervisors were under the impression that eventually he would be able to return to full duty. But after Wardia's doctor made clear the disability was permanent, Wardia was placed on leave without pay, effective October 18, 2009, to be considered as having resigned one year later.

No. 12-5337
*Wardia v. Justice & Pub. Safety Cabinet Dep't of Juvenile Justice*

Two weeks before the end of the one-year period, Wardia requested permanent assignment to the control room as an accommodation for his disability. After a pre-termination hearing, the Department of Juvenile Justice saw no reason to change its termination decision and issued a final notice of intent to dismiss on January 4, 2010. Wardia unsuccessfully appealed the decision to the Kentucky Personnel Board, and then filed a discrimination charge with the Equal Employment Opportunity Commission, which granted him a right-to-sue letter.

Accordingly, Wardia filed suit in state court alleging violations of the Americans with Disabilities Act ("ADA") and the Kentucky Civil Rights Act ("KCRA"). Defendants removed the action to federal court, and sought summary judgment after completing discovery. The district court granted summary judgment for the Department of Juvenile Justice, holding that the ability to perform physical restraints of juveniles was an "essential function" of a Youth Worker, and that permanent assignment to the control room was not a reasonable accommodation, as the ADA does not require employers to create a new position. The court relied heavily on *Hoskins v. Oakland County Sheriff's Department*, 227 F.3d 719 (6th Cir. 2000), which found that performing physical restraints of prisoners was an essential function of the job of a sheriff's deputy, and that permanent assignment to the control room was not a reasonable accommodation. Wardia now appeals, arguing that there is enough disputed evidence to preclude summary judgment and that *Hoskins* is distinguishable.

**II**

This court reviews de novo a district court's grant of summary judgment. *Chattman v. Toho Tenax Am., Inc.*, 686 F.3d 339, 346 (6th Cir. 2012). Summary judgment is appropriate where the record shows "that there is no genuine dispute as to any material fact and the movant is entitled to

No. 12-5337
*Wardia v. Justice & Pub. Safety Cabinet Dep't of Juvenile Justice*

judgment as a matter of law." Fed. R. Civ. P. 56(a). All facts and inferences are viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Nevertheless, the issue of fact must be "genuine." *Ibid*. Summary judgment will be denied only where the record as a whole could lead a rational trier of fact to find for the nonmoving party. *Ibid*.

The ADA prohibits employment discrimination against a "qualified individual on the basis of disability." 42 U.S.C. § 12112(a). Where the ADA claim is based on direct evidence, the initial burden is on the plaintiff to show that he 1) has a disability, and 2) is "otherwise qualified" for the position, either "(a) without accommodation from the employer; (b) with an alleged 'essential' job requirement eliminated; or (c) with a proposed reasonable accommodation." *Kleiber v. Honda of Am. Mfg., Inc*, 485 F.3d 862, 869 (6th Cir. 2007); *Monette v. Electronic Data Sys. Corp.*, 90 F.3d 1173, 1186 (6th Cir. 1996). After the prima facie case is made, the burden shifts to the employer to prove that the "challenged job criterion is essential" or that the "proposed accommodation will impose an undue hardship upon the employer." *Kleiber*, 485 F.3d at 869. The Department of Juvenile Justice does not dispute that Wardia was fired because of his injury or that such injury is a disability for purposes of the ADA. Thus we proceed directly to the "essential function" and "reasonable accommodation" analyses.

**A**

It is uncontested that official Department policy treats the ability to perform physical restraints of juveniles as an essential function of Youth Workers. The written job description specifically lists performing restraints as one of the essential functions of the job, and Youth Workers are required to

No. 12-5337
*Wardia v. Justice & Pub. Safety Cabinet Dep't of Juvenile Justice*

undergo safe-physical-management-skills training for three months upon entry and on an ongoing monthly basis. Wardia attempts to create an issue of material fact by arguing first, that physical restraints are too rare to be considered essential, and second, that physical restraints are "optional" in practice, with weaker employees often relieved by their stronger coworkers.

Wardia's first argument is incorrect, as a matter of law. Wardia has not disputed that "the potential for physical confrontation . . . exists on a daily basis." *Hoskins*, 227 F.3d at 727. Rarity alone will not support denial of summary judgment: courts will first look to the seriousness of failing to perform the low-probability job function. Here, inability to properly restrain juveniles could have serious consequences for the safety of staff and juveniles at the facility. *See Hoskins*, 227 F.3d at 727 (inability to restrain prisoners "could be a serious threat to security"). Indeed, if the Department did not mandate safe-physical-management skills for its staff, it might subject itself to liability from injured employees and juveniles. *See Brickers*, 145 F.3d at 850 (noting "possible tort liability" if school bus driver could not lift in an emergency); *see also Hennagir v. Utah Dept. of Corr.*, 587 F.3d 1255, 1259 (10th Cir. 2009) (holding physical safety requirement for physician's assistants at prison, imposed after a technician who was attacked by an inmate sued the prison, to be an essential function).

Wardia next submits that multiple pieces of evidence on the record are sufficient to raise a genuine issue of material fact: 1) Youth Worker Jeff Colwell testified that the control room was often used to accommodate weaker older and female workers, who would rotate in when "more muscle" was needed on the floor, 2) Commissioner Ronald Haws testified that he "had no problem" with rotating out Youth Workers incapable of performing restraints when the need arose, and 3)

No. 12-5337
*Wardia v. Justice & Pub. Safety Cabinet Dep't of Juvenile Justice*

Superintendent Mark Cummins testified that permanent placement in the control room would be no more than a "minor administrative burden." These facts are taken somewhat out of context, and even when viewed in the light most favorable to Wardia, do not support his position.

First, while explaining that more experienced staff members would relieve weaker coworkers if necessary, Jeff Colwell did not testify that any workers *never* performed restraints. Simply because some employees more often or more capably perform a certain function does not make it any less essential for everyone else. Second, Wardia takes Commissioner Haws's statement out of context; Haws approved of the practice described by Jeff Colwell—occasional relief from restraints when circumstances demand it—but objected to a standard practice of sending female or older workers into the control room if restraints were needed. Third, Superintendent Cummins's "minor administrative burden" statement was in reference to the scheduling issues of permanent placement of Wardia in the control room, not the security risks of Youth Workers unable to restrain.

Since Wardia has not raised a genuine issue of material fact as to the essentiality of physical restraints for Youth Workers in general, the analysis proceeds to reasonable accommodation.

**B**

In performing a reasonable-accommodation analysis under the ADA, it is the plaintiff's duty to propose an accommodation that is objectively reasonable to employers generally, and then the burden shifts to the employer to show that the accommodation would impose an undue burden with regard to the specific situation. *Walsh v. United Parcel Serv.*, 201 F.3d 718, 726 n.3 (6th Cir. 2000) (citing *Monette*, 90 F.3d at 1184 n.10). Wardia proposes two accommodations: 1) working all functions, but being relieved by coworkers whenever the need to restrain arises, or 2) permanent

No. 12-5337
*Wardia v. Justice & Pub. Safety Cabinet Dep't of Juvenile Justice*

assignment to the control room. Neither is reasonable on its face, and thus we do not proceed to the undue-burden step of the analysis.

Wardia's first proposal, working with assistance to perform restraints, is not reasonable because "the ADA does not require employers to accommodate individuals by shifting an essential job function onto others." *Hoskins*, 227 F.3d at 729; *see also* 29 C.F.R. pt. 1630, App. § 1630.2(o) ("An employer or other covered entity is not required to reallocate essential functions [since] . . . the assistant would be performing the job for the individual with the disability rather than assisting the individual to perform the job."). Any other rule would render the essential-function step of an ADA analysis meaningless.

Wardia's second proposal, permanent assignment to the control room, is not reasonable because employers cannot be required to convert either rotating or temporary positions into permanent positions. *Hoskins*, 227 F.3d at 730. A position in the control room is a prototypical rotating position: working control is an easier, less stressful job that provides Youth Workers with a valuable break from dealing directly with juveniles—a break that potentially improves overall staff performance. The accommodation here is indistinguishable from that in *Hoskins*, where the control booth position "rotated around so that everybody had a chance to have their break," and the court concluded that permanent assignment "would essentially require the creation of a new position rather than reassignment to an otherwise existing vacant one." *Id.* at 730. Further, permanent assignment to the control room would have the effect of "shifting an essential job function onto others" who could not rotate off as often, leaving them with Wardia's share of physical restraints and direct juvenile contact. *Id*. at 729.

No. 12-5337
*Wardia v. Justice & Pub. Safety Cabinet Dep't of Juvenile Justice*

It is true that on a longer-term basis, the control room has also been used as a light-duty alternative for injured workers who cannot safely interact with juveniles, instead of as a rotating position. Wardia suggests that since he was able to work in the control room without incident for over a year, it cannot be unreasonable to allow him to continue in this position. But as *Hoskins* explained, "temporary light-duty positions for recuperating employees" need not be converted into permanent positions. *Id.* at 730. To do otherwise would actually frustrate the purposes of the ADA: if employers are locked into extending temporary positions for injured workers on a permanent basis (whether initially granted consistent with company policy or as a well-intentioned special arrangement), they might well be less inclined to permit such an arrangement in the first place.

Wardia counters that the control-room position was not actually temporary, submitting an affidavit from coworker Mahannare Harris, who claimed to have been offered a permanent position in the control room after she injured herself on the job and was unable to perform restraints. An isolated, unaccepted job offer, however, does not create a new position or change the status of similar positions. There are other reasons why the Department may have offered this position on a permanent basis: to reduce disability payments, to avoid litigation, or simply as a sympathetic accommodation. Since the control-room accommodation is on its face unreasonable, we need not address the relevance of the job offer to an undue-burden analysis.[1]

---

[1]Wardia also argues that whatever the reasonableness of the proposed accommodations, the Department of Juvenile Justice violated the ADA by failing to engage in good faith in an informal, interactive process, as required by Sixth Circuit case law. But an interactive-process argument simply does not create an independent ground to support an ADA violation beyond standard reasonable-accommodation analysis. *Lafata v. Church of Christ Home for the Aged*, 325 F. App'x 416, 422 (6th Cir. 2009). In any case, the Department did make an effort to accommodate Wardia:

No. 12-5337
*Wardia v. Justice & Pub. Safety Cabinet Dep't of Juvenile Justice*

### III

For the foregoing reasons, the decision of the district court to grant summary judgment is **AFFIRMED**.

---

on December 10, 2009, administrative officer Renee McCord talked with Wardia about his inability to do his current job and helped him to apply for some transportation jobs that were available. *See Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195, 203 (6th Cir. 2010).